## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD PAUL POLICZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | Civil Action No. 24-1034 |
| DAVID RUSSO, individually and as | ) | Electronically Filed |
| Greene County District Attorney; | ) | |
| ZACHARY SAMS, individually and as a | ) | |
| Police Officer for the Greene County | ) | |
| Regional Police Department; GREENE | ) | |
| COUNTY REGIONAL POLICE | ) | |
| DEPARTMENT; and COUNTY OF | ) | |
| GREENE, PENNSYLVANIA, | ) | |
| | ) | |
| | ) | |

Defendants.

### COMPLAINT

AND NOW comes Plaintiff, Richard P. Policz, by and through counsel, Tina O. Miller, Esq. of COMBER MILLER, LLC, and brings this suit against (1) David Russo, individually and in his official capacity as District Attorney for Greene County, Pennsylvania; (2) Zachary Sams, individually and in his official capacity as a police officer for the Greene County Regional Police Department; Greene County, Pennsylvania and as a Detective for the Greene County District Attorney's Office; (3) the Greene County Regional Police Department, and (4) the County of Green, Pennsylvania.

In support, Mr. Policz avers as follows:

## I.   INTRODUCTION

1.      This civil action arises from the corrupt policies and practices of Defendants David Russo (the former Greene County District Attorney) and Zachary Sams (and their cohorts) as they relate to Plaintiff Richard P. Policz.

2.      Russo and Sams conspired together, and with others, over several years to violate the constitutional rights of numerous individuals, including Mr. Policz, by engaging in a pattern and practice of publicly harassing, disparaging, threatening, investigating and falsely prosecuting perceived opponents and their associates, including many who served in various capacities within the Greene County government.

3.      For its part, Defendant Greene County knew of Russo's and Sams's misconduct, because the events recounted herein related to Mr. Policz were not the only instances of such constitutional interference by Russo and Sams.

4.      As it relates to Mr. Policz, Russo and Sams publicly accused him of wrongdoing and brought false criminal charges against him for supposedly obstructing the investigation into the failure of a Greene County 911 dispatcher to properly respond to a medical emergency that allegedly led to the unfortunate death of a Greene County citizen. The charges against Mr. Policz were ultimately found to be meritless and were dismissed by the Greene County Court of Common Pleas.

5.      Mr. Policz was swept up in Russo's and Sams's corrupt and illegal practices not through any fault of his own. Instead, it was part and parcel of Russo's and Sams's scheme to

intimidate and retaliate against various public and private officials in Greene County and was part of a pattern and practice of malicious retaliation and a reckless relationship with the truth.

6.     Russo and Sams failed to lawfully exercise their duties in the wrongful death investigation by obtaining search warrants not supported by probable cause, by deeming the efforts of Mr. Policz to insure that employees' privacy rights were not being violated as "obstructive" and by failing to actually conduct *a search* despite obtaining *three* search warrants for the Greene County 911 Center over the course of approximately two years. That whole time, the binder in question in the underlying criminal proceedings sat, in plain view, on a shelf in the middle of the 911 Center.

7.     When Russo and Sams actually articulated that they were looking for a policy binder, and Mr. Policz was specifically asked for the binder in July 2022, he handed it over immediately and without objection or fanfare.

8.     Russo engaged in investigative and administrative conduct during the period relevant here, including interviewing witnesses, sending an email directive to Plaintiff about the SWAT team Russo created, strategizing on how to obtain evidence against Plaintiff, collaborating on the drafting of search warrants and the drafting of the criminal complaint against Plaintiff.

9.     In short, Russo and Sams engaged in a pattern and practice of infringing the constitutional rights of others by weaponizing the criminal justice system in Greene County. Mr. Policz now seeks redress for those violations.

## II.   JURISDICTION

10.     This civil rights action is brought pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(a), (3), (4) and 42 U.S.C. § 1983.

11.     Plaintiff further invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear and adjudicate Plaintiff's claims arising under Pennsylvania state law.

## III.   VENUE

12.     The acts or omissions giving rise to the Plaintiff's claims arose in Greene County, Pennsylvania, which is located within the Western District of Pennsylvania. Thus, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the Western District of Pennsylvania.

## IV.   PARTIES

13.     Plaintiff Richard P. Policz is an adult individual and citizen of Pennsylvania, residing in Greene County, Pennsylvania. In July, 2020, he served as the Operations and Training Officer for Greene County's Emergency Management department. In October 2021, he was appointed as Acting Director of the Greene County Department of Emergency Services.  In January, 2022, Mr. Policz was appointed as the Director of Greene County Department of Emergency Services.

14.     Defendant David Russo is an adult individual and former Greene County District Attorney.  He is a resident of Holbrook, Pennsylvania, in Greene County. At all relevant times Russo was the Greene County District Attorney, served as the chief law enforcement officer for Greene County, and was the supervisor of the District Attorney

4

Detectives—including Defendant Sams.  In that capacity, and as a duly elected public official and representative of Greene County, Russo was a policy maker for Greene County.  Russo, in concert with others, illegally charged Mr. Policz with various criminal charges on or about July 18, 2022.  Russo is sued in both his individual and official capacities.

15.     Defendant Zachary Sams is an adult individual and resident of McDonald, Pennsylvania, in Greene County.  He was at all relevant times an employee of the Greene County Regional Police Department, employed as law enforcement officer and acting in the course and scope of that employment. Defendant Sams was promoted by Russo to Chief Detective for the Greene County District Attorney's Office in July, 2022, where according to his sworn testimony, he "administer[ed] the functions of the Detective's Office under the auspices of the District Attorney."  On July 1, 2020, Sams was the full-time chief of police for the Greene County Regional Police Department and was a part-time county detective for the Greene County District Attorney's Office. Sams also remained employed by the Greene County Regional Police Department. A Greene County Detective is an employee of the Greene County District Attorney's Office.  Sams was employed as a sworn peace officer acting in the course and scope of that employment.  Defendant Sams is sued in both his individual and official capacities.

16.     At all relevant times, Defendants Russo and Sams were acting under color of state law, and were clothed with the authority of the state.

17.     Defendant Greene County Regional Police Department ("Greene County Police") is a police department created by multiple townships in the County of Greene, Pennsylvania. Based upon information and belief, the Department serves the Townships of

5

Wayne, Morris, and Perry in Greene County, Pennsylvania. It employed Sams and other law enforcement officers involved in the facts described herein.  It has an address at 1713 Browns Creek Road, P.O. Box 36, Nineveh, PA 15353.

18.     Defendant Greene County is a sixth-class Pennsylvania County Government headquartered at 93 East High Street, Waynesburg, PA 15370, created and existing by virtue of the laws of the Commonwealth of Pennsylvania. At all relevant times, it was the employer of Defendants Russo and Sams.

19.     The actions taken by Defendants were in concert with one another and were part of a conspiracy to improperly and falsely retaliate, oppress, charge, arrest, and prosecute the Plaintiffs, and to otherwise deprive Plaintiffs of their constitutional and statutory rights.

## V.     FACTUAL ALLEGATIONS

### (Former) District Attorney Russo

20.     In 2019, Russo was elected as Greene County District Attorney and was sworn into office in January 2020.

21.     Within days of assuming office, Russo began opposing various initiatives by the County Commissioners, resulting in various disputes.

22.     Within the first 18 months of Russo's tenure as DA, approximately a dozen employees either resigned or were terminated, including experienced Assistant District Attorneys, clerical assistants, and detectives. Those who resigned pointed to Russo's misbehavior and misconduct as the reason for their departure, while Russo fired other long-serving County employees.

23.     Russo's professional and personal misbehavior is well-documented, and includes a failure to investigate potential crimes related to the loss of marijuana plants from a commercial grower; improper efforts to consolidate power in his office by, for example, unilaterally creating a SWAT team overseen by him; and numerous alcohol-related problems, including violations of the Greene County alcohol policy related to government events, and other instances of public intoxication that tarnished Russo's personal and professional reputation.

24.     Most notable, however, is Russo's propensity to threaten and use his authority as the Greene County District Attorney to seek retribution against perceived rivals.

25.     In the spring of 2020, Russo attempted to assemble his own SWAT team. Plaintiff spoke out publicly against Russo's plan.  Plaintiff gave an interview to Channel 4 Action news on June 9, 2020 that was broadcast on that same date.  During that interview, Plaintiff indicated that the Pennsylvania State Police already have a well-trained SWAT team and publicly expressed concern over the District Attorney's plan, including questioning the jurisdiction and authority of the District Attorney to form the SWAT team.[1]

26.     Russo was also interviewed by Channel 4 Action news and that interview was broadcasted during the same news segment as Plaintiff's interview.  Russo stated "I'm not trying to replace the State Police" and "I'm putting together an emergency response team that is going to be trained specifically to deal with school shootings and incidents in school. I'm taking county detective status and my county detectives, my local law enforcement officers will be

---

[1] https://www.wtae.com/article/greene-county-da-forming-emergency-response-team-to-deal-with-active-shooters/40245131

recruited. I will be giving them status so they have jurisdiction over the county." Upon information and belief, Russo was upset that Plaintiff publicly criticized his plan.

27.     Defendant Greene County failed to intervene and stop the District Attorney's formation of the SWAT team.

28.     Despite its knowledge of the actions of Russo, Sams and their co-conspirators, for years Greene County did nothing to deter, intervene or stop the pervasive misconduct and retaliation of Russo and Sams.

29.     Greene County made an effort to intervene only after Defendant Russo filed baseless charges against Eugene Grimm, who was Greene County Solicitor.

30.     In response, in May, 2023, Grimm filed a Complaint to Remove the Greene County District Attorney Pursuant to 16 Pa.C.S. §1405 and 1406 in the Court of Common Pleas of Greene County (Exhibit 1 hereto). The Complaint details the County's knowledge of the long history of Russo and Sams's retaliatory conduct. The actions set forth in that Complaint include both prosecutorial and non-prosecutorial actions by Russo, including acts against Plaintiff.

31.     After a hearing, Greene County President Judge Lou Dayich entered an order appointing the Pennsylvania Attorney General to serve as a special prosecutor investigating Russo. There was probable cause to believe that Russo at least "committed gross negligence in performance of his duties." (Exhibit 2)

32.     Another example of Russo's malfeasance arose in relation to his failure to properly oversee the Greene County office of Victim Witness Coordinator and his inappropriate relationship with at least one individual in that office. That misconduct

8

necessitated an outside investigation into Russo's conduct, straining the relationship between Russo's office and the County Commissioners.

33.     It also led to a dispute in early 2022 over whether the District Attorney's office or the County Commissioners should control the office of the Victim Witness Coordinator. At that time, Russo sent at least one cease and desist letter to the County Commissioners, threatening litigation over their handling of the situation.

34.     Even more disturbing was Russo's express threat to bring criminal charges against certain Commissioners, including Michael Belding (who has since sued Russo, Sams, and others in this Court in part for that conduct), in response to their conduct in the dispute.

35.     On information and belief, Russo instructed Sams to pursue a criminal investigation against Mr. Belding related to the dispute over the Victim Witness Coordinator.

36.     On information and belief, Russo and Sams entered into an agreement to investigate and to eventually pursue criminal charges against Mr. Belding in order to retaliate against Mr. Belding for, *inter alia,* his position regarding the Victim Witness Coordinator.

37.     In September 2022, after filing baseless charges against Mr. Policz and others alleging obstruction and related offenses, Russo and Sams continued their pattern of using their power as law enforcement officers to conspire to seek retribution against other Green County officials and agencies with whom they were feuding, including Plaintiff.

38.     On September 8, 2022, Sams, in consultation and conjunction with Russo, obtained a search warrant as a "Greene County Detective[]" for "Stop the Bleed Kits" stored at the Greene County Emergency Management Office. Those kits contain the items necessary to control serious bleeding following traumatic injury.

39.     On information and belief, Sams obtained the search warrant at Russo's behest.

40.     Sams and other law enforcement officers served the search warrant on Plaintiff and seized all the kits owned by Greene County. (Exhibit 3)   The kits were turned over to Russo's control and withheld from emergency medical response teams.  The seizure included four kits removed from a local ambulance which deprived the local ambulance service of kits that could be used to protect members of the public.

41.     This dispute resulted in litigation.  Attorneys for Greene County were compelled to file an emergency motion to return property.  In the emergency motion, attorneys for Greene County alleged (a) the affidavit filed by Sams in support of the search warrant failed to allege a crime; (b) the affidavit filed by Sams misstated material facts; (c) the affidavit filed by Sams did not include information from which a court could determine the reliability of witnesses; and (d) the "Greene County District Attorney's Office exceeded its authority and unnecessarily put the citizens of Greene County and surrounding communities at risk." After a hearing on the emergency motion was convened, Russo agreed to return the kits.

42.     On October 5, 2022, Russo sent an email directly to Mr. Policz at his Greene County email address, containing the following purported order: "[e]ffective [i]mmediately, the Greene County SWAT Team shall be used for all Emergency Incidents involving an active shooter and/or shooters. Greene County SWAT will also be available to serve high risk warrants."  (Exhibit 4).

43.     Russo further purported to order that "[t]he Greene County District Attorney's Office and Chief County Detective are the Governing Law Enforcement Agency of Greene County and therefore maintains complete control of Greene County SWAT Team, both

jurisdictionally and operationally. Under no circumstances shall Greene County SWAT not be notified of Critical Incident Events within Greene County." (Exhibit 4 p. 2)

44.     Underscoring these statements, Russo threatened Mr. Policz with arrest if called the Pennsylvania State Police SWAT team to a scene.  Russo indicated, "UNDER NO CIRCUMSTANCES are ANY other Police Agencies or their agents permitted to order and or take command of SWAT by penalty of law." (Exhibit 4)(*emphasis in original*)

45.     Mr. Policz did not work for the District Attorney's Office and as such, Russo had no authority to order him to do anything, let alone order him not to inform the Pennsylvania State Police of an emergency incident.

**Mr. Policz Oversees Greene County Emergency Management, not its 911 Center**

46.     In July 2020, Mr. Policz served as the Operations and Training Officer for Greene County's Emergency Management department. His role was to facilitate emergency management planning and training—meaning he was primarily responsible for developing, reviewing, and updating emergency response plans, operational procedures, and training programs for the County's emergency management activities.

47.     Greene County Emergency Management was one of two components of Greene County's Department of Emergency Services. The other side was the "911 Center." The two components were located in the same building. Mr. Policz's office was in that building, although not in the same room as the 911 Operations Center. Mr. Policz did not have supervisory or management authority over the 911 Center personnel or day-to-day operations, because he was not responsible for the 911 Center at that time.

48.     The Department of Emergency Services maintained several policies and directives applicable to employees, including approximately sixty pages of "Operating Guidelines" that outlined the standard operating procedures for the 911 Center, along with two pages of "Employee Training Requirements." One of the operating guidelines was called "Requests for a Particular Service," and states that "Greene County 911 will grant the request of any caller wishing a particular service. Greene County 911 will also dispatch the proper municipal service."

49.     Separately, the 911 Center kept an unofficial binder of various documents and emails as a reference for the dispatchers to be able to access. The binder contained, for example, after-hours contact information, CFS Codes, and procedures for answering the coroner's line. It also contained a letter (dated December 18, 2017) from Robert Keller of the Morris Township Board of Supervisors, requesting that officers of the Greene County Police be notified and dispatched to ALL emergency calls for service in Morris Township. At all relevant times, including in July of 2020, that letter, and the binder itself, were not hidden, but were located in plain view on a lazy Susan in the middle of the 911 Center, between the dispatchers.

**Mr. Policz Becomes a Target of Russo's and Sams's Vengeful Conduct**

50.     On July 1, 2020, a resident of Greene County tragically fell fatally ill from complications caused by alcohol overuse. In a period of acute organ failure, a family member called 911 to request an ambulance, but no ambulance was dispatched to the residence.

51.     The 911 operator who answered the July 1, 2020 call was found to have violated certain sections of the Greene County "Operating Guidelines," including the policy titled

"Requests for a Particular Service." That dispatcher was internally disciplined. The disciplinary notice was signed by Mr. Policz, in the context of assisting human resources.

52.     Greene County Police also investigated the death as a potential crime. As part of that investigation, they sought records to determine what the dispatcher was supposed to have been doing and whether his actions matched those necessary to show culpability for a potential crime.

53.     Normally, in seeking such records, Greene County Police would simply ask for them by way of an email or some other written request to the management at the 911 Center, and those records would be provided.

54.     In this instance, however, the Defendants did not do that.  The police department did not ask the Department of Emergency Services for the records. They did not reach out to Greene County, any officials, or anyone at the 911 Center. They did not interview anyone in human resources or with the county.

55.     Defendants instead took the aggressive and unnecessary step of applying for and obtaining three separate search warrants for the 911 Center.

*The First Search Warrant*

56.     The first search warrant, obtained on July 7, 2020, stated as follows: "TO LAW ENFORCEMENT OFFICER: WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure."

57.    The "premises to be searched" was the Greene County 911 Operations Center, located at 55 West Greene St., Waynesburg, PA 15370.

58.    The name of the owner, occupant, or possessor of the premises was identified as "Greene County Emergency Management."

59.    The "items to be searched for or seized" included:

Any and all phone records, phone logs, dispatch (CAD) software logs, event logs, incidents or reporting software entries, and phone recordings, unadulterated and unaltered recordings of incoming phone lines on servers, as storage media, and regardless of file type, All radio transmission records during the listed time frame; current training policy for dispatchers; and any and all directives for standard operating procedures currently in place . . . ."

60.    The search warrant application did not recite a crime or criminal code violation in the "violation" section—instead, it merely stated "Death Investigation."

61.    "Death Investigation" is not a section of the criminal code in Pennsylvania.  Not every death is a crime.

62.    The search warrant, therefore, was invalid on its face.

63.    Sams indicated in the affidavit of probable cause that, as part of the investigation, he wanted to see the directives, training policies, the standard operating procedures, and other policies to determine what the 911 dispatcher in question should have done on July 1, 2020.  He claimed "it was an initial search warrant to gather the evidence and to conduct the investigation."

64.    The first warrant was served after close of business and during the early evening hours of July 7, 2020. Sams, along with a team of deputies from the Greene County Sheriff's Office and police officers from Waynesburg Borough walked it into the 911 center and handed it to a dispatcher, who indicated that because it was after hours (a fact well known to Sams) no

manager was on the premises. That dispatcher then called management, and eventually Mr. Policz along with two other officials from the 911 center arrived to discuss the warrant with the officers.

65.     At the end of that discussion, the officials from the 911 Center provided a CD with nearly all the information sought by the investigating officers, including the information related to the 911 calls at issue, the "CAD records," the recording verifications, and the two audio recordings of the 911 calls. The only items not provided on the CD were the current training policy and standard operating procedures. The officers agreed to return the following day to pick up the rest of the requested items.

66.     Sams did not conduct a search of the 911 Center on July 7, 2020.

67.     Sams returned to the 911 Center the following day (July 8, 2020), with Detective Caldwell who was serving as both a part-time Greene County District Attorney's Office detective and a Green County Regional police officer.  Sams encountered Mr. Policz, who indicated that he (Mr. Policz) had been talking to others about the request, and asked if Sams could call about coming back to get the remaining records. Sams agreed to that arrangement.

68.     In an effort to ensure that no employee's privacy rights were violated, Mr. Policz was in contact with the County's Chief Clerk and the County Solicitor about Sams' request for certain personnel records. The request was being reviewed to ensure the 911 Center was complying with privacy laws.

69.     Approximately an hour later, the 911 Center again contacted Sams and asked to have until 1:00 p.m. the following day to provide the requested documents. Sams indicated that he was "not okay with that" request.  Sams neither gave nor had any legitimate reason for Sams

to be "not okay with that" request.  There was no urgency for Russo or Sams to obtain these documents.

70.     On information and belief, Sams's conduct in this regard was undertaken in consultation with and at the request of Russo and in furtherance of their conspiracy, which was aimed at retaliating against those who Russo and Sams perceived were aligned with their enemies.

*The Second Search Warrant*

71.     Rather than having a discussion with officials for the 911 Center about the request for more time, Sams grew impatient and, after consulting with Russo, Sams applied for a second search warrant later that evening (at approximately 8:00 PM on July 8, 2020).  He then served it within a half hour of obtaining it, long after ordinary business hours.  There was no exigency which required the search warrant to be served so late in the evening.

72.     Armed with the second search warrant, Sams, along with Detective Caldwell, Officer Rokavec and Officer Griffin from the Greene County Regional Police Department, the investigators met with Mr. Policz and others at the 911 Center, and this time there was a discussion about "storage devices" being added to the search warrant.

73.     Accompanying Sams on this occasion were several other officers from the Greene County Police.

74.     Again, Sams chose not to conduct a search of the 911 Center.

75.     The 911 Center had already prepared a CD in response to the first warrant. In Sams's presence, Mr. Policz confirmed with Jeff Rhodes that everything was on the CD. The CD was then provided to Sams.

16

76.     Sams then immediately checked the CD's contents on a laptop he had brought, and confirmed it contained 22 Excel files, two Word Documents, 22 audio .wav files, and two PDFs of the CAD. Among the documents provided were the policies Sams requested, i.e. the Operating Guidelines and Employee Training Requirements. The CD also included a number of "directives" among the Operating Guidelines.

77.     According to the receipt/inventory of items recovered in the search, 2.48 MB of material was provided to Sams by "EMA Management."

*The Third Search Warrant*

78.     Approximately two years later, the Greene County 911 operator who took the call on July 1, 2020 was criminally charged by Russo and Sams for, among other things, involuntary manslaughter. The Operating Guidelines that the 911 Center provided to Sams on July 8, 2020 were, according to Sams, an important part of the charging decision.

79.     After the 911 operator was charged, a former fellow dispatcher contacted the police. According to Sams, she was a "whistleblower" who called to tell them that there were additional books of standard operating procedures or directives at the 911 Center. According to the former dispatcher, however, she merely "told them quite a few stories and what I thought about the training." She also indicated that there were "manuals there . . . that showed you the procedures . . . that you're to read. And there are times when things come up that they would print it . . . and it would be placed in the center of the 911 Center."

80.     Sams and Russo did not use this new information to conduct interviews to determine whether there were any additional policies that may have been overlooked.  They did not ask anyone at the 911 Center to corroborate the information from the "whistleblower."

17

They did not ask any other Greene County officials whether there were additional training policies.  Instead, Sams, at Russo's direction, applied for a *third* search warrant. This warrant sought new information, specifically described as "all books and binders containing paper copies of memos, directives, or policies as official or authoritative instructions." The third warrant misrepresented the information provided by the "whistleblower," as Sams and Russo well knew.

81.     Consistent with his past practice, Sams once again did not actually execute the search warrant by attempting to search the 911 Center. Instead, he once again showed up at the 911 Center and requested the "books and binders," which, combined with the language in the search warrant, led Mr. Policz to understand what was being requested, and he immediately provided all of it.

82.     The binder at issue was in the same spot where it was in July, 2020:  in plain view on a lazy Susan in the middle of the dispatch room.

83.     The only document in the binder the Commonwealth determined to be relevant to its prosecution was a single letter from December, 2017, which provides the same directive as the "Requests for a Particular Service" contained in the Operating Guidelines that had already been provided to Sams two years earlier in July 2020. Both the December, 2017 letter and the "Requests for Particular Service" instruct 911 Center operators to dispatch the requested emergency services and the proper municipal service in response to emergency calls.

84.     The letter obtained in 2022 did not factor in the Commonwealth's decision to charge the 911 operator—he had already been charged before investigators saw the letter.

**Russo and Sams Bring Charges Against Mr. Policz and Others Without Probable Cause**

85.     Shortly after obtaining the third search warrant, Sams and Russo filed seven charges, including two felony charges, against Mr. Policz and two 911 Center supervisors, Gregory Clay Leathers and Robert Jeffrey Rhodes.

86.     On information and belief, Sams filed the charges on July 18, 2022 at Russo's direction. Mr. Policz was arrested and temporarily detained as a result of those charges. He was released on a $25,000 unsecured bond.

87.     The charges all arose out of Russo's and Sams's fabricated – and unfounded and unsupported – tale that Mr. Policz, Mr. Leathers, and Mr. Rhodes had intentionally tampered with and obstructed the investigation into the 911 dispatcher's conduct that led to the resident's death.

88.     On information and belief, the charges were the result of Russo and Sams conspiring to malign and seek retribution against those Greene County officials (like Messrs. Policz, Leathers, and Rhodes) who Russo and Sams believed had wronged them.

89.     Russo's theory on all charges, as articulated at the October 27, 2022, preliminary hearing, was that "[w]hen a warrant goes out to a public official, such as, say, a post office or some other government agency that says you need these documents, that public official is required to provide those documents. It is part of their official duties." Thus, Russo argued that all he needed to prove was that the binder in question was at the 911 Center and was not given to Sams and the other investigating officers. Beyond that, Russo also argued that it was unnecessary to show that Mr. Policz's conduct was intentional for the purposes of establishing its prima facie case.

90.     The district magistrate presiding over the preliminary hearing dismissed the conspiracy charges and one felony tampering charge against Mr. Policz. Three remaining charges were held over for court: tampering with or fabricating physical evidence in violation of 18 Pa. C.S. § 4910; tampering with public records in violation of 18 Pa. C.S. § 4911(a)(3); and obstructing administration of law or other government function, in violation of 18 Pa. C.S. § 5101.

91.     Following the preliminary hearing in October, 2022, Russo waited until March, 2023, to file the Criminal Information.

92.     Mr. Policz filed a motion for writ of habeas corpus with the Greene County Court of Common Pleas, seeking dismissal of all charges. The crux of Mr. Policz's motion was that the Commonwealth could not, as a matter of law, prove the essential elements of the tampering and obstruction charges and that the Commonwealth's legal position was unprecedented, unsupported by any law, dangerously overreaching, and in defiance of the law and the Constitution.

93.     As to the tampering charges, Mr. Policz argued that there was no evidence that he altered, concealed, destroyed, or removed any record, document or thing—indeed, the binder containing the letter in question was never alleged to have moved from sitting in plain view in the middle of the 911 Center.

94.     As for the obstruction charge, Mr. Policz argued that the Commonwealth presented no evidence of a breach of official duty, because Mr. Policz had no official duty to assist the investigators with their search, particularly where the warrant itself was expressly directed to the "LAW ENFORCEMENT OFFICER." The fact that Sams and the other

investigating officers abrogated their duty to properly execute the search warrants by not looking for anything did not impose an official duty on Mr. Policz.

95.     The trial court granted Mr. Policz's motion and dismissed all counts against him. As to the tampering charge, the court concluded that "[d]uring the execution of the search warrants, Mr. Sams or his colleagues did not search for anything. They simply handed the warrant to Mr. Rhodes. There is no merit to the [Commonwealth's] argument that any employee concealed the binder from law enforcement. The binder was in plain view to all dispatchers and to everyone in the room." Moreover, the court called the Commonwealth's argument regarding Mr. Policz's mental state "nonsense" and concluded that "[t]here is not a scintilla of evidence that Mr. Policz INTENTIONALLY prevented Mr. Sams from obtaining" the binder in question. (Exhibit 5)

96.     As for the obstruction charge, the court concluded that "[t]he record is devoid of any evidence that Defendant Policz physically interfered or breached any duty." It dismissed all charges.

*Harassment of Plaintiff and Others*

97.     Russo and Sams abused their authority and engaged in a pattern of harassment, retribution and retaliation against Plaintiff and others.

98.     For example, on October 6, 2022, Plaintiff was traveling east from East Greene Street onto SR 0021 in Franklin Township, Greene County. As he was making a turn in the right lane, Plaintiff noticed a dark colored SUV with a police lightbar approach him from the left pass lane. The vehicle had a "police" decal on it and was the same type of vehicle driven by Greene County Regional Police Department. As the vehicle approached, it decreased speed

rapidly, and quickly changed lanes to be directly behind Plaintiff.  The vehicle followed Plaintiff so closely, he could not see the vehicle's headlights and Plaintiff feared that the vehicle was going to ram him. After following him for some time, the vehicle passed Plaintiff and sped away.  There was no reason for the Greene County Regional Police Department to be patrolling in Franklin Township or following Plaintiff in that manner.

99.    Upon information and belief, Plaintiff avers that this action was intended to— and did—harass and intimidate him, and was undertaken at the direction of Russo and/or Sams.

100.    In addition to that incident, Plaintiff has dealt with other forms of harassment, all of which was undertaken at the direction of Russo and/or Sams, and was aimed at harassing and intimidating him and in retaliation for Mr. Policz speaking out against Russo's unilateral efforts to create a SWAT team answerable only to him.

101.    Greene County Regional Police Department and County of Greene were negligent and/or willfully indifferent to the rights of the Plaintiff, as well as the citizens of Greene County, by one or more of the following wrongful acts or omissions to act in violation of the Plaintiffs' Constitutional rights, in that they:

a)    Allowed policies and procedures to continue in force and effect which resulted in the use of unlawful arrest and malicious prosecution against the Plaintiff, in addition to resulting in violations of individuals' substantive constitutional rights to be secure in their persons and free from false arrest;

b)      Had a custom and practice of failing to independently and adequately investigate complaints of unlawful arrest, malicious prosecution, and unlawful search and seizure;

c)      Had a custom and practice of failing to effectively discipline or retrain county detectives, chiefs and officers who wrongfully utilized unlawful arrest, malicious prosecution, and unlawful search and seizure;

d)      Failed to establish appropriate policies and procedures to address and correct the repeated use of unlawful arrest, malicious prosecution, and unlawful search and seizure by law enforcement officers and Greene County Detectives; and

e)      Showed deliberate indifference to the rights of the Plaintiff's Constitutional Rights by virtue of failing to train and supervise Police Officers, Police Chiefs, Greene County Chief Detectives and Detectives.

## VI.    INJURIES TO PLAINTIFF

102.    By violating Mr. Policz's constitutional rights as outlined herein, and through the Defendants' unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions, the Defendants have directly and proximately caused Plaintiff significant harm, including but not limited to:

a.  Causing Mr. Policz to incur attorney fees and costs related to defend the false and malicious criminal charges asserted against him;

b.  Interfering with Mr. Policz's employment with Green County Emergency Management;

c.  Causing Mr. Policz severe physical and emotional harm, including stress and anxiety related to facing false criminal charges and the risk of being criminally punished for crimes he did not commit;

d.  Causing reputational damage to Mr. Policz stemming from the Defendants' use of media coverage to falsely associate him with criminal activity;

e.  Causing reputational damage to Mr. Policz by falsely labeling him a criminal;

f.  Forcing Mr. Policz to endure an unconstitutional process and public embarrassment and humiliation.

g.  Undermining Mr. Policz's relationship with law enforcement whom he routinely works with in his duties as the Director of Greene County Emergency Management.

103.  These injuries and damages to Plaintiff were foreseeable to Defendants at the time of their acts and omissions.

104.  Defendants' acts and omissions were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, and/or with bad faith, for the purpose of personal and/or political gain, and said acts meet all the standards for imposition of punitive damages.

## VII.   CLAIMS FOR RELIEF

### COUNT ONE
**Violation of Civil Rights Pursuant to 42 U.S.C. § 1983—Fourth and Fourteenth Amendments—Malicious Prosecution**
*Asserted Against Zachary Sams*

105.  The allegations of the above paragraphs are incorporated as though set forth fully herein.

106.    At all relevant times, Mr. Policz enjoyed the right under the Fourth and Fourteenth Amendments to the United States Constitution to due process of law and to be free from unreasonable searches and seizures, including the right to be free of malicious prosecution.

107.    It is clearly established that the institution of criminal charges against a perceived enemy without probable cause and for purposes of causing embarrassment and humiliation is a violation of the charged individual's constitutional rights to due process and to be free from unreasonable searches and seizures.

108.    On or about July 18, 2022, Sams, while acting under color of state law as a duly sworn peace officer employed by the Greene County Police, at the direction of Russo, filed unfounded criminal charges in Greene County, Pennsylvania against Mr. Policz while lacking probable cause for doing so. Those charges were ultimately terminated in Mr. Policz's favor on May 23, 2024, when they were dismissed following proceedings before the Greene County Court of Common Pleas.

109.    Sams's conduct was not aimed at seeking justice; rather, it was the result of malice toward Mr. Policz, and stemmed from the ongoing practice of Sams and Russo to seek retribution against perceived enemies by threatening to bring false criminal charges against such individuals.

110.    Sams's conduct directly and proximately led to a deprivation of Mr. Policz's rights, privileges, and immunities under the laws and Constitution of the United States, including his Fourteenth Amendment rights to liberty and due process and his Fourth and Fourteenth Amendment right to not be subjected to malicious prosecution.

111.     As a result of Sams's violation of Mr. Policz's constitutionally-protected rights, Mr. Policz suffered and continues to suffer harm as outlined above.

112.     Sams's actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT TWO
### Violation of Civil Rights Pursuant to 42 U.S.C. § 1983—Fourth and Fourteenth Amendments—Malicious Prosecution
### *Asserted Against David Russo*

113.     The allegations of the above paragraphs are incorporated as though set forth fully herein.

114.     At all relevant times, Mr. Policz enjoyed the right under the Fourth and Fourteenth Amendments to the United States Constitution to due process of law and to be free from unreasonable searches and seizures, including the right to be free of malicious prosecution.

115.     It is clearly established that the institution of criminal charges against a perceived enemy without probable cause and for purposes of causing embarrassment and humiliation is a violation of the charged individual's constitutional rights to be free from unreasonable searches and seizures.

116.     On or about July 18, 2022 Russo, while acting under color of state law as the elected District Attorney for Greene County, directed Sams to investigate and file unfounded criminal charges in Greene County, Pennsylvania against Mr. Policz while lacking probable cause for doing so. Those charges were ultimately terminated in Mr. Policz's favor on May 23,

2024, when they were dismissed following proceedings before the Greene County Court of Common Pleas.

117.    Russo's conduct was not aimed at seeking justice; rather, it was the result of malice toward Mr. Policz, and stemmed from the ongoing practice of Sams and Russo to seek retribution against perceived enemies by using their authority to bring false criminal charges against such individuals.

118.    Russo's conduct directly and proximately led to a deprivation of Mr. Policz's rights, privileges, and immunities under the laws and Constitution of the United States, including his Fourteenth Amendment rights to liberty and due process and his Fourth and Fourteenth Amendment Rights to not be subjected to malicious prosecution.

119.    As a result of Russo's violation of Mr. Policz's constitutionally-protected rights, Mr. Policz suffered and continues to suffer harm as outlined in Paragraph ____.

120.    Russo's actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT THREE
### Violation of Civil Rights Pursuant to 42 U.S.C. § 1983—Fourth and Fourteenth Amendments—False Arrest
#### *Asserted Against Zachary Sams*

121.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

122.    At all relevant times, Mr. Policz enjoyed the right under the Fourth and Fourteenth Amendments to the United States Constitution to due process of law and to be free from unreasonable searches and seizures, including the right to be free of false arrest.

123.    It is clearly established that seizure of a perceived enemy by arresting them without probable cause and for purposes of causing embarrassment and humiliation is a violation of the charged individual's constitutional rights to liberty and to be free from unreasonable searches and seizures.

124.    On or about July 18, 2022 Sams, while acting under color of state law as a duly sworn peace officer employed by the Greene County Police, at the direction of Russo, obtained and executed an arrest warrant for Mr. Policz while lacking probable cause for doing so. Mr. Policz was detained at the at time and remained in custody until released on bond.

125.    Sams intentionally seized Mr. Policz without probable cause because at all relevant times, Sams knew that the alleged charges against Mr. Policz were unfounded and unsupported by the facts known to him at that time.

126.    Sams's conduct in seizing Mr. Policz stemmed from the ongoing practice of Sams and Russo to seek retribution against perceived enemies by using their authority to bring false criminal charges against such individuals.

127.    Sams's conduct was a "seizure" within the meaning of the Fourth Amendment because it deprived him of his liberty and freedom of movement.

128.    Sams's conduct directly and proximately led to a deprivation of Mr. Policz's rights, privileges, and immunities under the laws and Constitution of the United States, including his Fourteenth Amendment rights to liberty and due process and his Fourth and Fourteenth Amendment right to not be subjected to malicious prosecution.

129.    As a result of Sams's violation of Mr. Policz's constitutionally-protected rights, Mr. Policz suffered and continues to suffer harm as outlined above.

## COUNT FOUR
### Violation of Civil Rights Pursuant to 42 U.S.C. § 1983—Fourth and Fourteenth Amendments—Municipal Liability Failure to Train and/or Supervise
### *Asserted Against Greene County*

130.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

131.    At all relevant times, Mr. Policz enjoyed the right under the Fourth and Fourteenth Amendments to the United States Constitution to due process of law and to be free from Greene County's failure to train and/or supervise its employees such that it led to unconstitutional searches and seizures, including of malicious prosecution and false arrest.

132.    Greene County, acting through Russo and Sams as described above, failed to adequately train and/or supervise its employees, which led to the predictable result of them engaging in malicious prosecution and false arrest against their perceived enemies and violating those individuals' constitutional rights.

133.    As described above, Russo and Sams undertook conduct toward Mr. Policz that amounted to false arrest and malicious prosecution based on the perception that Mr. Policz was an enemy.

134.    Sams, as a member of Greene County Police, undertook the illegal conduct outlined above in the course of his employment with Greene County and at Russo's direction in Russo's capacity as Greene County District Attorney.

135.    Greene County violated Mr. Policz's rights by its failure to establish policies and procedures for its County Detectives regarding the use of search warrants and seizure of places and persons, power to arrest, the execution of search warrants, the gathering of evidence and the filing of criminal charges against individuals, as well as its failure to adequately train and/or

supervise its employees, including Russo and Sams, which led to them engaging in false arrest and malicious prosecution in furtherance of a personal vendetta against Mr. Policz.

136.   Defendant Greene County failed in its duty to properly train its law enforcement officers, including but not limited to Russo and Sams, to avoid the constitutional violations and harms alleged herein.

137.   Greene County was deliberately indifferent to the outcome of that failure to train and/or supervise; namely, that constitutional violations would result from its failure to adequately train and/or supervise Russo and Sams.

138.   In fact, Greene County was aware of other nearly identical violations, as Russo routinely threatened to prosecute other Greene County employees who he perceived as enemies, including County Commissioner Michael Belding.

139.   Through its deliberate indifference to the predictable outcome of failing to adequately train and supervise its employees, Greene County was the proximate and direct cause of the constitutional violation suffered by Mr. Policz.

140.   In establishing these procedures, Defendant County of Greene had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that created a substantial likelihood that individuals would be subjected to the use of unlawful search and seizure, malicious prosecution, unlawful arrest, or loss of certain substantive due process rights by Defendant County of Greene's detectives while acting under color of state law.

**COUNT FIVE**
**Violation of Civil Rights Pursuant to 42 U.S.C. § 1983—Fourth and Fourteenth Amendments—Municipal Liability Practice/Custom**
*Asserted Against Greene County and Greene County Regional Police Department*

141.     The allegations of the above paragraphs are incorporated as though set forth fully herein.

142.     Defendant Greene County is a sixth-class Pennsylvania County Government which administers and maintains the Greene County District Attorney's Office and Greene County Regional Police as part of its executive branch.

143.     Greene County Regional Police Department is a municipal-created police department with jurisdiction in multiple townships in Greene County.

144.     It was a custom and practice in Greene County and the Greene County Regional Police Department that individuals would be subject to unconstitutional harassment, threats of criminal prosecution, false arrest and malicious prosecution when they were perceived by Sams and Russo to be enemies.

145.     That custom and practice was so widespread that it had the force of law when it came to Russo's and Sams's treatment of perceived enemies.

146.     On information and belief, Greene County officials knew or should have known of this practice—particularly since they were frequently the target of such threats and harassment.

147.     The custom and practice played itself out on numerous occasions throughout Russo's tenure as District Attorney, including with the dispute over the Greene County Victim Witness Coordinator's office, and in Russo's and Sams's treatment of County Commissioner Belding.

148.    Defendant Greene County Regional Police Department has, or should have, established policies and procedures for its police officers regarding the constitutional exercise of governmental powers such as searches and seizures of places and persons, arrests, the execution of search warrants, and the filing of criminal charges against individuals.

149.    Defendant Greene County Regional Police Department failed in its duty to properly train its law enforcement officers, including but not limited to Sams, to avoid the constitutional violations and harms alleged herein.

150.    The custom or practice was the cause of and moving force behind the violations of Mr. Policz's rights, including his Fourth and Fourteenth Amendment rights as outlined above.

151.    In establishing these procedures, Defendants had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States to refrain from enforcing or continuing in effect policies and procedures that created a substantial likelihood that individuals would be subjected to unlawful search and seizure, malicious prosecution, unlawful arrest, or loss of certain substantive due process rights by Defendants and their employees acting under color of state law.

152.    As a direct and proximate result of one or more of the foregoing wrongful acts or failures to act, Mr. Policz sustained a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

153.    The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT SIX
## 42 U.S.C. § 1983: First Amendment Retaliation
### *Asserted Against David Russo*

154.    Plaintiff hereby incorporates by reference all of the preceding paragraphs.

155.    The First Amendment to the United States Constitution prohibits government officials from retaliating against individuals for exercising their constitutionally-protected rights, including their right to freedom of speech.

156.    It is clearly established that engaging in threatening behavior and ultimately instituting criminal charges against an individual in response to that individual's exercise of their First Amendment free speech rights is retaliatory conduct prohibited under the Constitution.

157.    On approximately June 9, 2020, Plaintiff gave an interview to Channel 4 Action News, publicly objecting to Russo's attempts to assemble his own SWAT team by indicating that the Pennsylvania State Police already have a well-trained SWAT team and publicly expressing concern about Russo's plan.

158.    Plaintiff's June 9, 2020 statements constituted constitutionally-protected speech.

159.    On information and belief, Russo was aware of Plaintiff's constitutionally protected statements, because Russo was also quoted in the same news segment defending his unilaterally-created SWAT team.

160.    In direct response to Plaintiff's constitutionally protected statements, Russo maliciously directed a baseless investigation and ultimately filed unfounded criminal charges against Plaintiff on July 18, 2022.

161.    But for Plaintiff's constitutionally protected speech, Russo would not have directed a baseless investigation or filed unfounded charges against him.

162.    On October 6, 2022, a Greene County Regional Police marked vehicle followed Mr. Policz so closely that he feared the vehicle would run into his car. On information and belief, this threatening conduct was undertaken at the direction of Russo, and was a direct result of Mr. Policz's statements to Channel 4 Action News about Russo's plans to unilaterally create a SWAT team.

163.    These instances of harassment and intimidation against Mr. Policz constitute retaliation for Mr. Policz's exercise of his First Amendment rights.

164.    On information and belief, Russo's retaliatory conduct has had a chilling effect on others, who have not spoken out in fear of retaliation for expressing their views of Russo and his office.

165.    Mr. Policz has sustained significant monetary damages as a direct and proximate result of the injuries set forth above.

166.    Russo's actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT SEVEN
### 42 U.S.C. § 1983: Illegal Search and Seizure in Violation of the Fourth Amendment
### *Asserted Against David Russo and Zachary Sams*

167.    Plaintiff hereby incorporates by reference all of the preceding paragraphs.

168.    Under color of state law, Defendants illegally obtained a search warrant for the Greene County 911 Center on or about July 7, 2020 and subjected Mr. Policz to an illegal

seizure and detention of his person without probable cause in violation of Mr. Policz's rights under the Fourth Amendment to the United States Constitution.

169.    Under color of state law, Defendants utilized a facially invalid search warrant to obtain access to the 911 Center and demand Mr. Policz to appear at the center pursuant to the search warrant.

170.    Mr. Policz has sustained significant monetary damages as a direct and proximate result of the injuries set forth above.

171.    The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

**COUNT EIGHT**
**§1983 Conspiracy**
*Against David Russo and Zachary Sams*

172.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

173.    Defendants' above-described acts constitute a conspiracy to violate Plaintiff's constitutional rights under §1983

174.    From on or about June 2020, to in and around November, 2023, Russo and Sams agreed and conspired to deprive Mr. Policz of his constitutional rights under the First, Fourth and Fourteenth Amendments to the United States Constitution by engaging in the conduct set forth above, including false arrest, malicious prosecution, and retaliation.

175.     The Defendants' actions as set forth above in furtherance of the conspiracy were undertaken knowingly, intelligently, intentionally, negligently, recklessly and/or with malice and in reckless disregard of Mr. Policz's rights under the United States Constitution.

176.     As a result of Defendants' conduct, Mr. Policz has suffered physical injuries, pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, and other injuries.

177.     The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

**COUNT NINE**
**Section 1983 Supervisory Liability**
*Against David Russo*

178.     The allegations of the above paragraphs are incorporated as though set forth fully herein.

179.     As District Attorney, Defendant Russo served as a supervisor of Sams, who was employed and/or acting as a District Attorney's Office Detective during all times relevant to this Complaint.

180.     Russo directed Sams to engage in the conduct set forth in detail in the Factual Allegations above, including but not limited to the filing of charges against Plaintiff that was in violation of Plaintiff's First, Fourth and Fourteenth Amendment rights.

181.     Russo had actual knowledge of Sams' violations of Plaintiff's rights and Russo acquiesced in those violations.

182.     Alternatively, Russo knew or reasonably should have known that Sams' actions would cause a violation of Plaintiff's rights.

183.     As a result of Defendants' conduct, Mr. Policz has suffered physical injuries, pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, and other injuries.

184.     The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

185.     Russo acted with deliberate indifference to the consequences of Sams' actions and maintained a practice or custom which directly caused the conduct i.e. Russo's practice and custom of using his position as District Attorney and as the chief law enforcement officer in Greene County to retaliate against his perceived enemies, including Plaintiff.

186.     Furthermore, Russo failed to adopt policies for County Detectives concerning the proper way to obtain search warrants, the necessity to allege an actual crime in the search warrant, the necessity to have a search warrant supported by probable cause and the proper way to execute search warrant and lawfully obtain evidence.  Russo further failed to adopt policies to prevent false charges from being filed against citizens.

187.     Russo knew the failure to adopt these policies created an unreasonable risk of harm to the citizens of Greene County, including Plaintiff, and Russo was deliberately indifferent to those risks.  As a result of Russo's failure to adopt proper policies to insure that individuals were not subjected to harassment, retaliation, and false charges.

## COUNT TEN
### False Arrest under Pennsylvania Law
### *Asserted Against David Russo and Zachary Sams*

188.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

189.    Defendants' above-described acts constituted a False Arrest under the common law of Pennsylvania.

190.    At all relevant times, Russo and Sams served as the Greene County District Attorney and Greene County Police Detective, respectively, and were acting under the color of law and within their employment by Defendant County of Greene and the Greene County Regional Police Department.

191.    On or about July 18, 2022, acting in concert and in their capacity as Greene County District Attorney and Greene County Detective, wrongfully, unlawfully, and without probable cause instituted charges against and arrested Mr. Policz.

192.    Defendants committed these actions intentionally and without just cause or provocation by Mr. Policz.

193.    As a direct and proximate result of the facts and circumstances set forth above, Mr. Policz was deprived of his liberty and has suffered great mental pain and suffering.

194.    Mr. Policz was also subjected to public embarrassment and damage to his reputation and name by the filing of these charges.

195.    The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT ELEVEN
### Malicious Prosecution under Pennsylvania Law
### *Against David Russo and Zachary Sams*

196.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

197.    Defendants' above-described acts constitute malicious prosecution under the common law of Pennsylvania.

198.    Defendants initiated criminal proceedings against Mr. Policz without probable cause and for a purpose other than that of bringing an offender to justice.

199.    The proceedings were terminated in favor of Mr. Policz as described above.

200.    As a direct and proximate result of Defendants' described acts, Mr. Policz suffered emotional suffering, mental anguish, humiliation, loss of liberty, and other injuries.

201.    The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## COUNT TWELVE
### Civil Conspiracy
### *Against David Russo and Zachary Sams*

202.    The allegations of the above paragraphs are incorporated as though set forth fully herein.

203.    Defendants' above-described acts constitute a civil conspiracy under Pennsylvania common law.

204.    On or about July 18, 2022, Russo and Sams conspired to deprive Mr. Policz of his constitutional rights under the First, Fourth and Fourteenth Amendments to the United

States Constitution by engaging in the conduct set forth above, including false arrest, malicious prosecution, and retaliation.

205.   The Defendants' actions in furtherance of the conspiracy were undertaken knowingly, intelligently, intentionally, negligently, recklessly and/or with malice and in reckless disregard of Mr. Policz's rights under the Pennsylvania and United States Constitutions.

206.   As a result of Defendants' conduct, Mr. Policz has suffered physical injuries, pain and suffering, emotional distress, mental anguish, loss of reputation, scorn of the community, and other injuries.

207.   The Defendants' actions exceeded the normal standards of decent conduct and were willful, malicious, oppressive, outrageous, and unjustifiable and, therefore, punitive damages are warranted.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Richard Policz respectfully requests that this Court enter a judgment awarding him compensatory and punitive money damages in an amount to be determined against the Defendants. Mr. Policz also seeks his attorneys' fees and costs under 42 U.S.C. § 1988, as well as any other further relief as the Court may deem just and proper.

## IX.     JURY DEMAND

Plaintiff demands a trial by jury on all issues triable under Federal Rule of Civil

Procedure 38.


Dated: July 17, 2024

Respectfully submitted,

*/s/ Tina O. Miller*
TINA O. MILLER
PA ID No. 71101
COMBER MILLER LLC
300 Koppers Building ,436 Seventh Avenue
Pittsburgh, PA 15219
412-894-1380; 412-291-2109 (fax)
tmiller@combermiller.com

Attorney for Plaintiff Richard Policz